Case 1:07-cv-01109-JDT-STA   Document 1-6   Filed 05/25/07   Page 1 of 19   PageID 20



# STATE OF TENNESSEE
## DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

CORP LAW DEPT

MAY 08 2007

May 1, 2007

Life Investors Ins Co Of America
4333 Edgewood Road Ne
Cedar Rapids, IA  52499
NAIC # 64130

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2150 0004 6619 5655
Cashier # 3075

Re: Norris & Nancy Mccaskill   V.   Life Investors Ins Co Of America

    Docket # 10419

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint was served on me on April 26, 2007 by Norris & Nancy Mccaskill pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Chancery Court of Chester County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Chester County
    P O Box 262
    Henderson, Tn  38340



Service of Process 615.532.5260

SUMMONS                                      R.D. NO. 10419

## STATE OF TENNESSEE
## IN THE CHANCERY COURT OF CHESTER COUNTY, TENNESSEE

TO:   LIFE INVESTORS INSURANCE COMPANY OF AMERICA
      (f/k/a Equity National Life Insurance Company)
      Please Serve: Commissioner of Insurance
      500 James Robertson Parkway
      Nashville, TN 37243-1131

You are summoned to appear and defend a civil action filed against you entitled:

**NORRIS L. McCASKILL and NANCY McCASKILL**

VS.

**LIFE INVESTORS INSURANCE COMPANY OF AMERICA, f/k/a
EQUITY NATIONAL LIFE INSURANCE COMPANY**

which has been filed in Chancery Court, Chester County, Tennessee, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the court and send a copy to **J. Brandon McWherter, Spragins, Barnett & Cobb,** Plaintiffs' Attorney, whose address is **P.O. Box 2004, Jackson, TN 38302**. In case of your failure to defend this action by the above date, judgment by default can be rendered against you for the relief demanded in the complaint.

ISSUED: _April 23_, 2007.

                              CORNELIA HALL, CLERK AND MASTER

                              By _Cornelia Hall_
                                   Deputy Clerk & Master

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return, that on the ____ day of _____, 2007, I served this summons together with a copy of the complaint herein as follows: _____

_____
_____
_____

                                   _____
                                              Sheriff

IN THE CHANCERY COURT OF CHESTER COUNTY, TENNESSEE
AT HENDERSON

NORRIS L. MCCASKILL, and
NANCY MCCASKILL

    Plaintiff,

vs.                                                No. 10419

LIFE INVESTORS INSURANCE
COMPANY OF AMERICA,
f/k/a EQUITY NATIONAL
LIFE INSURANCE COMPANY,

    Defendant.

FILED 9:00 AM
APR 23 2007
CORNELIA HALL
CLERK & MASTER

*I, Cornelia Hall, Clerk & Master in and for Chester County do hereby certify that this is a true and correct copy of the original that appears in my office, this the 23 day of April 2007. Cornelia Hall, Clerk & Master*

## COMPLAINT

COMES NOW the Plaintiff, NORRIS MCCASKILL, and respectfully submits the following Complaint against LIFE INVESTORS INSURANCE COMPANY OF AMERICA:

### I. PARTIES AND JURISDICTION

1. Plaintiffs, Norris McCaskill (hereafter "Mr. McCaskill") and wife, Nancy McCaskill (hereafter "Mrs. Nancy McCaskill"), are adult citizens and residents of Chester County, Tennessee, residing at 1555 New Friendship Road, Beech Bluff, Tennessee 38313.

2. Defendant, Life Investors Insurance Company of America (hereafter "Life Investors"), is an insurance company authorized to do business in the State of Tennessee. At times relevant to this lawsuit, Life Investors was known as Equity National Life Insurance Company. Life Investors is engaged in the cancer insurance business and is authorized to and does write policies of insurance in the State of Tennessee.

3. This Complaint originates as the result of Life Investors' failure to pay benefits pursuant to a policy of insurance as required under the applicable law.

## FACTS

4. On or about April 4, 1990, Mr. McCaskill purchased a Cancer Policy from Life Investors, then known as Equity National Life Insurance Company, whereby Life Investors agreed to insure Mr. McCaskill and his family for hospitalization and medical expenses related to the treatment of cancer, being policy number 00E925559 (the "Policy"). A copy of the Policy is attached hereto as **Exhibit A** and is incorporated by reference as if set forth herein.

5. The Policy stated as follows: "BENEFITS FOR HOSPITALIZATION AND MEDICAL EXPENSES FOR TREATMENT OF CANCER." Specifically, pursuant to the Policy, benefits are to be paid based on "actual charges."

6. The Policy also sets out the "Schedule of Benefits for such Sicknesses," with regard to the "actual charges" that it will pay.

7. The Policy is more akin to a life insurance policy, rather than a health insurance policy, in that it pays benefits to the insured, rather than pays for medical treatment.

8. Mr. McCaskill paid the required premiums at all times relevant to this Complaint.

9. The Policy is a family policy, which under the terms of the policy, covers Mr. McCaskill's lawful wife, Nancy McCaskill.

10. In or around December 1996, Mrs. McCaskill was first diagnosed with cancer. During her battle with cancer, Mrs. McCaskill received treatment covered under the Policy.

11. During Mrs. McCaskill's first bout with cancer, Mr. McCaskill submitted to Life Investors f/ka Equity National Life Insurance Company the charges from the various medical providers

that provided medical services to Mrs. McCaskill, irrespective of any payment by a health insurance company, as the Policy does not take into consideration any such payment and Life Investors obligation to pay under the policy is in no way affected by payment by any health insurance company. Life Investors accepted the amounts submitted by Mr. McCaskill, which were the "actual charges" of the medical providers, and paid them pursuant to the terms of the Policy.

12. After enduring treatment, Mrs. McCaskill's cancer finally went into remission.

13. Based on the payments that they had received under the Policy, Mr. McCaskill kept the Policy in place following Mrs. McCaskill's battle with cancer, just in case the cancer came back.

14. At all relevant times, Mr. McCaskill continued to pay the premiums on the Policy following his wife's battle with cancer, even though Life Investors raised the premiums on numerous occasions. The most recent monthly premium amount was $161.31.

15. These payments were made by Mr. McCaskill in reliance on the coverage listed in the Policy and as paid by Life Investors during his wife's initial bout with cancer.

16. Unfortunately, Mrs. McCaskill's cancer resurfaced in 2006.

17. In conjunction with her second battle with this deadly disease, Mrs. McCaskill received treatment covered under the Policy.

18. Just as before, Mr. McCaskill submitted the "actual charges" from the medical providers, expecting payment under the terms of the Policy, as he and his family had received before.

19. However, Life Investors refused to honor its commitment to pay the "actual charges," even though it had done so before, claiming that it was only responsible for the discounted amount

paid by the McCaskill's health insurance provider as opposed to Mr. McCaskill's actual charges.

20. This action by and on behalf of Life Investors was in contravention of the terms of the Policy and its course of dealing/prior actions in interpreting the Policy and providing payment under the Policy.

21. Life Investors has refused to pay all monies owed under the Policy.

22. Despite the fact that Mr. McCaskill has fulfilled all duties imposed upon him by Life Investors and the Policy and is at no fault in this matter, Life Investors refuses to make payment as required under the Policy.

23. Life Investors' refusal to pay the money and benefits due and owing Mr. McCaskill under the Policy has caused Mr. McCaskill to seek legal counsel and to initiate this Complaint to recover the insurance proceeds to which he and his family are entitled.

## II.  CAUSE OF ACTION - BREACH OF CONTRACT

24. The allegations contained in paragraphs 1 through 23 of this Complaint are incorporated herein by reference, as if set forth verbatim.

25. The Policy issued by Life Investors is a binding contract, and is supported by valid consideration.

26. Life Investors is in total, material breach of the Policy, and Life Investors is liable to Mr. McCaskill for the "actual charges" of the medical treatment received by his wife, which are the charges of the medical provider, rather than the amount paid by any health insurance provider.

27. As a result of Life Investors' breach of contract, Mr. McCaskill has sustained substantial compensable losses for the amounts claimed under the Policy, as well as money damages for other numerous and assorted incidental and consequential damages.

WHEREFORE, as a result of the foregoing, Mr. McCaskill would respectfully request that this Honorable Court award a judgment against Life Investors as follows:

A. For compensatory damages, all costs incurred by Mr. McCaskill as a result of this action, and pre-judgment interest against Life Investors for breach of contract not to exceed $74,900.00;

B. For such other further and general relief as this Court deems just and equitable.

Respectfully submitted,

SPRAGINS, BARNETT & COBB, PLC

By: _____
J. BRANDON McWHERTER #21600
CLINTON H. SCOTT #23008
Attorneys for Plaintiffs
312 E. Lafayette Street, P.O. Box 2004
Jackson, TN 38302
(731) 424-0461

## COST BOND

We stand as sureties for costs in this cause.

SPRAGINS, BARNETT & COBB, PLC

BY: _____

X:\Brandon\JBM docs\JBM files\McCaskill, Norris\Pleadings\Complaint.wpd\5

# Equity National
## Life Insurance Company
A Stock Company
Home Office: Atlanta, Georgia
Administrative Offices: 501 Wood Lane, Little Rock, Arkansas 72201





EXHIBIT
A

**PREMIUM RATE SUBJECT TO CHANGE - GUARANTEED RENEWABLE FOR LIFE**

| | | |
|---|---|---|
| Insured - NORRIS L MC CASKILL | Type of Coverage - FAMILY | Policy Term Premium - $19.85 |
| Effective Date - 04-04-1990 | Term - MONTHLY | |
| Policy Number - 00E925559 | | Total Term Premium - $19.85 |

## CANCER POLICY

### BENEFITS PROVIDED FOR HOSPITALIZATION AND MEDICAL EXPENSES FOR TREATMENT OF CANCER

This is a legal contract between the Policyowner and the Company. **READ YOUR POLICY CAREFULLY!**

In this policy you, the insured, and other covered family members, as defined in Part 1, will be referred to as "you", "your" or "yours", and Equity National Life Insurance Company will be referred to as "we", "our", "us" or "Company".

This policy is issued in consideration of your application, a copy of which is attached to and made a part hereof, and payment of the first premium shown above. We agree to insure you and other covered family members against loss resulting from hospital confinement and other specified expenses (as defined in Part 3, Schedule of Benefits for Such Sickness) for the definitive treatment of cancer to the extent herein provided. The provisions on the following pages are a part of this policy.

## THIS IS A LIMITED POLICY - READ IT CAREFULLY

### INSURED'S RIGHT TO EXAMINE POLICY

If you are not satisfied with this policy, you may return it to us at our Administrative Offices, 501 Wood Lane, Little Rock, Arkansas 72201 or to the agent who took your application, within 10 days after you receive it for a full refund of premium and cancellation of the policy.

IMPORTANT NOTICE: Please read the copy of the application attached to the policy. Carefully check the application. Write us if any of the information shown is not correct and complete.

### RENEWAL GUARANTEE AND PROVISIONS REGARDING RENEWAL PREMIUMS

You are guaranteed the right to renew this policy for your lifetime by the payment of premiums at the rate in effect at the beginning of each term. We may change the established premium rate, but only if the rate is changed for all policies of this class. While this policy is in force, no change will be made in your class because of the age, sex or physical condition of any person covered under this policy. Class will be defined as all policies of this form number and premium classification in force in the state in which you reside. In the event of a change in the established premium rate, we will notify you in writing at your last known address at least 31 days before the change becomes effective.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary.

*m. P. Roy*
Secretary

*[signature]*
President

### CANCER ONLY SUPPLEMENTAL POLICY
### GUARANTEED RENEWABLE FOR LIFE
### SUBJECT TO THE COMPANY'S RIGHT TO CHANGE THE PREMIUM RATE
### AND TO PAYMENT OF MAXIMUM BENEFITS

Form ENCAN3.3

# PART 1 - DEFINITIONS

## A. CANCER DEFINED- POSITIVE PATHOLOGY REQUIRED

Cancer is defined as a disease manifested by the presence of a malignant tumor characterized by the uncontrolled growth and spread of malignant cells, the invasion of tissue, or leukemia.

Such cancer must be positively diagnosed by a legally licensed doctor of medicine certified by the American Board of Pathology to practice Pathologic Anatomy, or an Osteopathic Pathologist certified by the Osteopathic Board of Pathology. Diagnosis must be based on a microscopic examination of fixed tissue, or preparations from the hemic system (either during life or post-mortem). The pathologist establishing the diagnosis shall base his judgment solely on the criteria of malignancy as accepted by the American Board of Pathology or the Osteopathic Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor, tissue, or specimen. Clinical diagnosis does not meet this standard.

Whenever the requisite positive diagnosis of cancer can only be made post-mortem, we shall assume retroactive liability. Our liability shall be limited to the period of time beginning with the date of the terminal admission to the hospital but not to exceed 45 days prior to the date of death.

## B. INSURED DEFINED

If this is a "family" policy, "family" is defined as the insured named on Page 1 and the spouse of the named insured on the effective date of this policy. "Family" also includes dependent children of the named insured (or of the spouse) who are unmarried and under 25 years of age. Any family member specifically excluded from coverage by endorsement to this policy is not included in the family definition. Any person who becomes a family member after the effective date of this policy, except newborns who are automatically covered from the moment of birth, must be added by endorsement. Persons added as family members by endorsement will be covered for only that cancer diagnosed on or after the 30th day following the endorsement date. It is not necessary to notify the company of a child's birth and no additional premium will be required for coverage of newborns or persons added as family members by endorsement.

The insurance on any child shall terminate on the anniversary date of this policy following the child's 25th birthday or the child's marriage, whichever occurs first. Termination shall be without prejudice to any claim originating prior thereto. Our acceptance of premium after such date, shall be considered as premium for only the remaining persons who qualify as insureds under the policy. The coverage of any "family" contract shall include any other unmarried dependent child regardless of age who: (1) is incapable of self-sustaining employment by reason of mental retardation or physical handicap; (2) became so incapacitated prior to age 25; and (3) had not reached age 25 on the effective date of this policy. Proof of such incapacity and dependency must be furnished to us by the policyholder 31 days prior to the termination date of the child's coverage. Proof of continued incapacity and dependency must be furnished at our request, but not more often than annually, after the two year period following the child's 25th birthday.

Under a "family" policy, when the last covered child attains the limiting age and the insured or spouse is no longer covered, if we bill and accept the family premium, then the last child's coverage shall continue to the end of the period for which said premium has been paid. In the event of death of the named insured, the spouse shall, if alive and covered hereunder, become the named insured.

## C. HOSPITAL DEFINED

Wherever used in this policy, the word "hospital" shall mean a legally operated institution which: maintains and uses on its premises or in facilities available to it on a pre-arranged basis, a laboratory, x-ray equipment and an operating room; maintains permanent and full-time facilities for the care of overnight resident bed patients under the supervision of one or more licensed physicians; provides 24-hours-a-day nursing service by or under the supervision of a graduate registered nurse; and maintains on the premises the patient's written history and medical records. The word "hospital" shall not include an institution, or part thereof, used as a place for rehabilitation, rest, the aged, drug addicts or alcoholics, a mental institution, sanitarium, nursing or convalescent home, a long-term nursing unit or geriatrics ward, or as an extended care facility for the care of convalescent, rehabilitative or ambulatory patients. Further, the term "hospital" shall not include any facility contracted for or operated by the United States Government for the treatment of members or ex-members of the armed forces. (See Part 3 I for United States Government Hospital benefits).

## D. CONVALESCENT NURSING HOME DEFINED

Whenever used in this policy "convalescent nursing home" shall mean an institution:

(1) operated pursuant to law;

(2) primarily engaged in providing, in addition to room and board accommodations, skilled nursing care under the supervision of a duly licensed physician;

(3) providing continuous 24-hours-a-day nursing services by or under the supervision of a registered graduate professional nurse (R.N.), for at least 8 hours per day and a registered graduate professional nurse (R.N.) or a licensed practical nurse (L.P.N.) for the remaining 16 hours; and

(4) maintaining a daily medical record of each patient.

"Convalescent nursing home" shall not include: any home, facility, or part thereof, used primarily for rest; a home or facility for the aged; or for the care of drug addicts, or alcoholics; or a home or facility primarily used for the care and treatment of mental diseases or disorders, or custodial or educational care.

## PART 2 - BENEFITS FOR SUCH SICKNESS

If any insured shall become afflicted with cancer, as herein defined, while this policy is in force, we will pay the indemnities according to the Schedule of Benefits for Such Sickness (Part 3), provided that:

(1) The cancer is first diagnosed, as provided herein, on or after the 30th day following the effective date shown on Page 1 hereof. The "diagnosis date" is the date the tissue specimen is taken upon which the cancer diagnosis is based. (See Part 4B.)
(2) All other limitations, conditions, and provisions of the policy shall apply.
(3) If an insured has cancer diagnosed after the effective date shown on Page 1 hereof, but before the 30th day following such effective date, coverage for that cancer will apply only to loss incurred commencing after 2 years from such effective date.
(4) Benefits will be paid for cancer diagnosed on and after the 30th day following the effective date shown on Page 1 hereof, provided such cancer is not a direct extension, metastatic spread or recurrence of any cancer diagnosed after such effective date, but before the 30th day following such effective date.

If cancer is diagnosed while you are hospital confined, benefits shall accrue from the date of admission, but no more than 10 days prior to the date cancer was diagnosed. No benefits shall be payable for expenses incurred prior to the 30th day after the effective date shown on Page 1 hereof. In no event shall more than the maximum benefits shown in the Schedule of Benefits for Such Sickness (Part 3) for each service or benefit be paid with respect to any one insured, irrespective of the number of cancers or malignant tumors such insured may have. We will not deny a claim on the basis that cancer existed prior to the date of diagnosis, if for the first time in the life of the insured, cancer is diagnosed 30 or more days after the effective date hereof.

## PART 3 - SCHEDULE OF BENEFITS FOR SUCH SICKNESS

As provided in Part 2 hereof (Benefits for Such Sickness) the Company will pay indemnities according to the following Schedule of Benefits. (There are no lifetime maximums, except as provided in Parts 3L and Q.)

### A. HOSPITAL CONFINEMENT BENEFIT

We will pay $200.00 per day for each of the first ninety (90) days of each period of hospital confinement. This benefit is for hospital room and board expenses and other charges not defined in this policy. There is no lifetime maximum.

### B. BENEFITS FOR NURSES SERVICES

We will pay the actual charges up to $75.00 per 24-hour day for full-time private care and attendance provided by registered graduate nurses, registered licensed practical nurses, or licensed vocational nurses. This benefit is payable only for services provided in the hospital. Private nurses and their services must be other than those regularly furnished by the hospital. These services must be required and authorized by the attending physician. This benefit is not payable for private nurses related to the insured. This benefit is payable only for the number of days the Hospital Confinement Benefit is payable. There is no lifetime maximum.

### C. BLOOD AND PLASMA BENEFIT

We will pay actual charges for the following expenses: blood and plasma, transfusion service, administration, processing and procurement fees and crossmatching. This benefit does not pay for laboratory expenses except those specifically named herein. This benefit is payable for expenses incurred in and out of the hospital. There is no lifetime maximum.

### D. AMBULANCE BENEFIT

We will pay actual charges up to $100.00 per trip to transfer an insured to the hospital for confinement as a patient. We will also pay up to $100.00 for the trip home from the hospital upon discharge. The ambulance service must be performed by a licensed or professional ambulance company. This benefit is limited to two trips per confinement. There is no lifetime maximum.

### E. IN HOSPITAL DRUGS AND MEDICINE BENEFIT

We will pay actual charges made by the hospital for drugs and medicines administered to an insured while confined to the hospital, not to exceed $24.00 per day. This benefit is payable only for the number of days the Hospital Confinement Benefit is payable. There is no lifetime maximum.

### F. ATTENDING PHYSICIAN BENEFIT

While confined to a hospital, if an insured requires the services of a licensed physician other than the surgeon who performed surgery, we will pay the actual charge up to $25.00 per day for such doctor's visits. The term "visit" shall mean an actual personal call by the doctor. This benefit is payable only for the number of days the Hospital Confinement Benefit is payable. There is no lifetime maximum.

### G. RADIATION THERAPY AND CHEMOTHERAPY BENEFIT

We will pay actual charges for the following services provided they are used for the purpose of modification or destruction of cancerous tissue, except for skin cancer: (1) teleradiotherapy using either natural or artificially propogated radiation; (2) interstitial or intracavitary application of radium or radioisotopes in sealed or non-sealed sources; (3) cancericidal chemical substances and their administration. We will pay actual charges up to $50.00 per treatment for skin cancer. This benefit will be reduced by any amount these charges are paid under the Drugs and Medicine and/or the Attending Physician Benefits. This benefit does not pay for laboratory tests, diagnostic x-ray, or pre-planning related to these therapy treatments. This benefit is payable for treatment received in or out of the hospital. There is no lifetime maximum.

## H. ANESTHESIA BENEFIT

We will pay actual charges for the administration of anesthesia during a surgical operation up to $50.00 or 25% of the amount shown in the Schedule of Operations (Part 3J) whichever is greater. The maximum amount payable per operation is $500.00. There is no lifetime maximum.

## I. GOVERNMENT HOSPITAL CONFINEMENT

We will pay $200.00 for each day for the first 15 days of confinement in a hospital operated by or for the United States Government, $100.00 per day for the 16th through 30th day and $50.00 for each day thereafter. The primary reason for this confinement must be for treatment of cancer. No other benefit is payable under this policy for confinement in a U.S. Government Hospital. There is no lifetime maximum. EXCEPTION: If less than 30 days separate two periods of government hospital confinement, then for the purposes of calculating benefits under this section, such second period of government hospital confinement shall be considered a continuation of the prior period of confinement.

## J. SURGICAL BENEFIT

When a surgical operation is actually performed on an insured for a diagnosed cancer, we will pay actual charges for the operation, including post-operative attendance. Benefits payable will not exceed the amount set opposite the name of the operation in the Schedule of Operations shown below. If any operation for the treatment of cancer is performed other than those listed, we will pay an amount comparable to the amount shown in the Schedule of Operations for the operation most nearly similar in severity and gravity. Two or more surgical procedures performed through the same incision will be considered one operation and benefits will be paid based upon the most expensive procedure. In no case shall the benefit payable exceed $2,000.00. There is no lifetime maximum on the number of operations.

## SCHEDULE OF OPERATIONS
(Maximum Amounts Payable)

**SKIN**
Excision of lesion of skin ............ $ 125.00
With flap or graft ................... 325.00
**THROAT**
Laryngoscopy ....................... 250.00
Laryngectomy
 (without neck dissection) ........... 650.00
 (with neck dissection) ............. 1,325.00
Tracheostomy ....................... 250.00
**CHEST**
Thoracentesis ....................... 80.00
Bronchoscopy ....................... 250.00
Mediastinoscopy .................... 250.00
Thoracotomy ....................... 650.00
Pneumonectomy .................... 1,325.00
Wedge resection .................... 1,000.00
Lobectomy ......................... 1,150.00
**LYMPHATIC**
Excision of lymph node .............. 150.00
Splenectomy ....................... 650.00
Axillary node dissection ............. 650.00
Lymphadenectomy
 (unilateral) ....................... 650.00
 (bilateral) ........................ 825.00
**MOUTH**
Hemiglossectomy ................... 325.00
Glossectomy ....................... 650.00
Resection of palate ................. 650.00
Tonsil/Mucous membrane ............ 500.00
**SALIVARY GLANDS**
Biopsy ............................ 325.00
Parotidectomy ..................... 650.00
Radial neck dissection .............. 1,325.00
**ESOPHAGUS**
Esophagoscopy .................... 250.00
Resection of esophagus ............. 1,325.00
Esophagogastrectomy ............... 1,150.00
**SPINE**
Laminectomy ...................... 825.00
Cordotomy ........................ 500.00
**INTESTINES**
Sigmoidoscopy .................... 125.00

Proctosigmoidoscopy ............... $ 125.00
Colonoscopy ....................... 250.00
Cutting operation on rectum
 for biopsy ........................ 250.00
Colostomy / or revision of .......... 325.00
Ileostomy ......................... 325.00
Colectomy ........................ 825.00
Abdominal-perineal approach
 for removal of cancer of
 sigmoid colon or rectum ........... 1,650.00
Resection small intestine ........... 1,650.00
**LIVER**
Needle biopsy ..................... 125.00
Wedge biopsy ..................... 250.00
Resection of liver ................. 825.00

**PANCREAS**
Jejunostomy ...................... 825.00
Pancreatectomy ................... 2,000.00
Whipple procedure ................ 2,000.00
**ABDOMEN**
Paracentesis ...................... 75.00
Exploratory laporatomy ............ 500.00
Cholecystectomy .................. 650.00
**BLADDER**
Cystoscopy ....................... 125.00
Cystectomy
 (partial) ........................ 825.00
 (complete) ...................... 1,500.00
TUR bladder tumors ............... 500.00
**PROSTATE**
Cystoscopy ....................... 125.00
TUR prostate ..................... 500.00
Radial prostatectomy .............. 1,150.00
**PENIS** Amputation
 (partial) ........................ 250.00
 (complete) ...................... 500.00
 (radical) ........................ 650.00
**EYE**
Enucleation ...................... 325.00
P32 uptake ....................... 150.00

**THYROID**
Thyroidectomy
Partial (one lobe) ................. $ 500.00
Total (both lobes) ................. 650.00
**CERVIX**
D & C ........................... 150.00
Colposcopy ...................... 150.00
Vaginal hysterectomy/
 uterus only ..................... 500.00
Abdominal hysterectomy,
 uterus only ..................... 650.00
Uterus, tubes, & ovaries .......... 1,000.00
**MANDIBLE**
Mandibulectomy ................. 1,325.00
**BRAIN**
Exploratory craniotomy ........... 1,000.00
Burr holes not
 followed by surgery ............. 250.00
Excision brain tumor ............. 2,000.00
**BREAST**
Needle biopsy ................... 125.00
Cutting operation biopsy ......... 250.00
Mastectomy
 (simple) ...................... 650.00
 (radical) ..................... 1,000.00
Lumpectomy .................... 325.00
**STOMACH**
Gastroscopy .................... 250.00
Partial gastrectomy ............. 825.00
Gastrectomy ................... 1,150.00
Gastrojejunostomy .............. 825.00
**VULVA**
Vulvectomy
 (partial) ..................... 500.00
 (radical) .................... 1,000.00
**TESTIS**
Orchiectomy ................... 325.00
**KIDNEY**
Nephrectomy .................. 1,650.00
**MISC.**
Bone marrow biopsy or aspiration ... 125.00
Pathological fracture hip ......... 825.00

## K. LASER SURGERY BENEFIT

When laser surgery is actually performed on an insured for a diagnosed cancer, we will pay actual charges for the operation, including post-operative attendance. The benefits payable for each such procedure will not exceed the amount set opposite the name of the operation in the Schedule of Operations shown in Part 3J, Surgical Benefit. If any operation for the treatment of cancer is performed other than those listed, we will pay an amount comparable to the amounts shown in the Schedule of Operations for the operation most nearly similar in severity and gravity. Two or more laser surgery procedures performed through the same incision will be considered one operation and benefits will be paid based upon the most expensive procedure. In no case shall the benefit payable exceed $2,000.00. There is no lifetime maximum on the number of operations.

## L. PROSTHESIS

We will pay actual charges up to $500.00 for each prosthetic device prescribed as a direct result of surgery and which requires surgical implantation. Lifetime limits of $1,000.00 per insured.

## M. TRANSPORTATION AND LODGING BENEFIT

If special cancer treatment is prescribed in a hospital located over 200 miles from the home address of an insured, we will pay an additional $50.00 per day for the number of days payable under the Hospital Confinement Benefit (Part 3A), not to exceed 12 days per confinement. Treatment must be prescribed by a local attending physician. EXCEPTION: If less than 30 days separate two period of hospital confinement, then for the purposes of calculating benefits under this section, such second period of hospital confinement shall be considered a continuation of the prior period of confinement.

## N. HOME CARE BENEFIT

After an insured is discharged from the hospital, we will pay $25.00 per day, payable for the same number of days that benefits are payable under the Hospital Confinement Benefit (Part 3A), up to 30 days, less the first 14 days of confinement. EXCEPTION: If less than 30 days separate two periods of confinement, then for the purposes of calculating benefits under this section, such second period of hospital confinement shall be considered to be a continuation of the prior period of confinement.

## O. CONVALESCENT NURSING HOME BENEFIT

When, as the result of cancer, an insured requires confinement to a convalescent nursing home within 14 days following at least 90 consecutive days of hospital confinement for cancer, provided benefits have been paid under the policy for such period of hospital confinement, we will pay $100.00 for each day of such convalescent nursing home confinement, up to a maximum of 60 days.

## P. EXTENDED BENEFITS

(1) This benefit applies only to the period beginning with the 91st day of uninterrupted covered hospital confinement to the termination of such confinement. Confinement must be for the definitive treatment of cancer.

(2) Beginning with the 91st day of confinement of such continuous hospital confinement, we will pay 100% of the actual charges made by the hospital for room, board, and other customary services up to $15,000.00 per month.

(3) Thirty (30) days will be considered a month and periods of less than 30 days will be limited proportionately.

(4) Benefits under this provision will be paid in lieu of the Hospital Confinement Benefit (Part 3A) and Drugs and Medicine Benefit (Part 3E).

(5) Subsequent periods of hospital confinement of less than 91 consecutive days will be paid under the Schedule of Benefits for Such Sickness, Parts 3 A, B, C, D, E, F, G, H, J, K, M, N, and O subject to the limitations contained therein.

(6) There is no lifetime maximum.

## Q. HOSPICE BENEFIT

We will pay $50.00 per day for hospice care provided that:

(1) an insured is diagnosed with cancer;

(2) therapeutic intervention directed toward the cure of cancer is no longer appropriate;

(3) the insured's medical prognosis is one in which there is a life expectancy of six months or less as a direct result of cancer; and

(4) hospice care is provided by a licensed hospice.

This benefit is limited to a lifetime maximum of $1,000.00 for each insured.

A "hospice" means a licensed organization which provides to persons terminally ill and to their families a centrally administered and autonomous continuum of palliative and supportive care, directed and coordinated by the hospice organization primarily in the patient's home but also on an outpatient and short-term inpatient basis and which is classified as a hospice. This benefit does not cover nonterminally ill patients who may be confined in: a convalescent home; rest or nursing facility; a skilled nursing facility; a rehabilitation unit or a facility that provides treatment for persons suffering from mental disease or disorders; a facility that provides care for the aged, drug addicts, or alcoholics. For this benefit to be payable, we must be furnished a written statement from the attending physician that the insured person is terminally ill within the terms of this provision and a written statement from the hospice certifying the days on which services were provided.

# PART 4 - EXCEPTIONS AND LIMITATIONS

A. This policy pays only for loss resulting from hospital confinement for definitive cancer treatment, including direct extension, metastatic spread or recurrence. Pathologic proof thereof must be submitted to support each claim. This policy does not cover any other disease or sickness or incapacity.

B. No benefits are payable to anyone who has cancer diagnosed, as provided herein, before the policy has been in force 30 days after the effective date shown on Page 1 hereof. If an insured has cancer diagnosed after the effective date shown on Page 1 hereof, but before the 30th day following such effective date, coverage for that cancer will apply only to loss incurred commencing after 2 years from such effective date. Benefits will be paid for cancer diagnosed on and after the 30th day following the effective date shown on Page 1 hereof, provided such cancer is not a direct extension, metastatic spread or recurrence of any cancer diagnosed after such effective date, but before the 30th day following such effective date.

# PART 5 - RIGHT OF CONVERSION

## A. CONVERSION UPON DIVORCE

Should the named insured and spouse dissolve their marriage by a valid decree of divorce and the spouse was covered under a "family" policy, then the spouse can apply for and receive, without evidence of insurability, an individual policy providing coverage not greater than the terminated coverage. To obtain the individual policy, the spouse must make application to us within 30 days following the entry of the divorce decree and pay the appropriate premium for the policy. The effective date of coverage under the new policy shall be its effective date.

## B. CONVERSION WHEN POLICYHOLDER IS NO LONGER COVERED BY PAYROLL PLAN OR ASSOCIATION PLAN

This provision applies only if the policy was first issued under a payroll plan or association plan. A payroll plan or association plan is defined to be where 10 or more policies are issued to bona fide members of the union, association, or employees of the employer designated in the application. This policy shall cease to be a payroll plan or association plan policy if: (1) the organization ceases to exist; or (2) the premium is no longer remitted through the association designated in the application; or (3) the policyholder is no longer affiliated with the plan; or (4) the number of participants in the plan falls below 8. The policy may then be transferred into the individual plan of the year of issue to which it would have originally belonged in the absence of plan affiliation and shall be renewable thereafter at the rate for such individual plan.

# PART 6 - UNIFORM PROVISIONS

## A. ENTIRE CONTRACT

This policy, with the application and attached papers, is the entire contract between you and us. No change in this policy will be effective until approved by a Company officer. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions.

## B. TIME LIMIT ON CERTAIN DEFENSES

(1) Misstatements in the Application: After 2 years from the issue date only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability that starts after the 2 year period. In Georgia or North Carolina, after 2 years from the issue date no misstatements in the application may be used to void the policy or deny any claim for loss incurred or disability that starts after the 2 year period.

(2) Pre-Existing Conditions: No claim for loss incurred or disability that starts after 2 years from the issue date will be reduced or denied because a sickness or physical condition not excluded by name or specific description, before the age of 10 had existed before the effective date of coverage.

## C. GRACE PERIOD

This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the following 31 days. During the grace period the policy will stay in force.

## D. REINSTATEMENT

If the renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of premium by us (or by an agent authorized to accept payment) without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of its disapproval.

The reinstated policy will cover only loss that results from sickness that starts more than 10 days after such date. In all other respects, your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

Any premiums we accept for a reinstatement will be applied to a period for which premiums have not been paid. No premium will be applied to any period more than 60 days before the reinstatement date.

## E. NOTICE OF CLAIM

Written notice of claim must be given within 60 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our Administrative Offices, 501 Wood Lane, Little Rock, Arkansas 72201, or to our agent. Notice should include your name and the policy number.

## F. CLAIM FORMS

When we receive the notice of claim, we will send the claimant forms for filing proof of loss. If these forms are not given to the claimant within 15 days, the claimant will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time limit stated in the Proofs of Loss section.

## G. PROOFS OF LOSS

Written proof of loss must be given to us within 90 days after such loss.

If it was not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless the claimant was legally incapacitated.

## H. TIME OF PAYMENT OF CLAIMS

After receiving written proof of loss, we will immediately pay all benefits then due under the policy.

## I. PAYMENT OF CLAIMS

Benefits are payable to the insured. Any accrued benefits unpaid at such insured's death will be paid to the spouse of such insured, if living, otherwise to the estate of such insured. If benefits are payable to the insured's estate or a beneficiary who cannot execute a valid release, we can pay benefits up to $1,000.00 to one related to the insured or beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payments made in good faith.

We may pay all or a portion of any indemnities provided for health care services to the provider, unless the insured directs otherwise in writing by the time proofs of loss are filed. The Company cannot require that the services be rendered by a particular provider.

## J. PHYSICAL EXAMINATIONS AND AUTOPSY

We at our expense have the right to have you examined as often as reasonably necessary while a claim is pending. We may also have an autopsy made unless prohibited by law.

## K. LEGAL ACTIONS

No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after 3 years from the time written proof of loss is required to be given.

## L. CONFORMITY WITH STATE STATUTES

Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which the insured resides on that date is amended to conform to the minimum requirements of such laws.

# PART 7 - INDEX

| | |
|---|---|
| BENEFITS FOR SUCH SICKNESS | Part 2 |
| DEFINITIONS | Part 1 |
| EXCEPTIONS AND LIMITATIONS | Part 4 |
| INSURED'S RIGHT TO EXAMINE POLICY | Page 1 |
| NAME OF INSURED | Page 1 |
| RENEWAL GUARANTEE AND PROVISIONS REGARDING RENEWAL PREMIUMS | Page 1 |
| RIGHT OF CONVERSION | Part 5 |
| SCHEDULE OF BENEFITS FOR SUCH SICKNESS | Part 3 |
| UNIFORM PROVISIONS | Part 6 |

**THIS IS A LIMITED POLICY – READ IT CAREFULLY**

# Equity National Life Insurance Company
A Stock Company
Home Office: Atlanta, Georgia
Administrative Offices: 501 Wood Lane, Little Rock, AR 72201

537257

Proposed Insured: **Norris** (First) **L.** (Middle Initial) **McCaskill** (Last) **12/27/58** (Date of Birth) Male ☒ Female ☐

Spouse of Proposed Insured: **Nancy** (First) **A.** (Middle Initial) **McCaskill** (Last) **1/7/61** (Date of Birth) Male ☐ Female ☒

Residence Address: **Rt 1 Box 205** (Street) **Beech Bluff** (City) **TN** (State) **38313** (Zip) **(901) 989-5597** (Telephone)

| Plan Desired | | | | | Family | Individual | Premium Submitted | Mode | Premium Payment |
|---|---|---|---|---|---|---|---|---|---|
| Cancer Expense | A ☐ | AA ☐ | AAA ☒ | OA ☐ | ☒ | ☐ | $19.85 | ☐ Annual<br>☐ Quarterly | ☒ Bank Draft<br>☐ Direct Pay |
| Intensive Care | $_____ per day | | | | ☐ | ☐ | $_____ | ☐ Semi-Annual<br>☒ Monthly | Payroll<br>☐ Deduction |
| Heart Attack | A ☐ | AA ☐ | | | ☐ | ☐ | $_____ | | |

| | YES | NO |
|---|---|---|
| Is any person to be insured under this policy eligible for any title XIX program, Medicaid? (If yes, on reverse, list any such person.) | ☐ | ☒ |
| Does the proposed insured presently have a Cancer Expense Policy with this Company? | ☐ | ☒ |
| Will the insurance applied for replace or change any other insurance? | ☐ | ☒ |
| Does the proposed insured presently have any other accident and health insurance? (If yes, on reverse, list insurer, policy number, type of policy and amount of insurance.) | ☐ | ☒ |

## Health Questions

| | YES | NO |
|---|---|---|
| 1. Has any person proposed for cancer insurance ever had cancer in any form diagnosed or treated? | ☐ | ☒ |
| 2. Has any person proposed for intensive care or heart attack insurance ever been diagnosed or treated as a victim of a heart attack, heart condition, heart trouble or any abnormality of the heart? | ☐ N/A | ☐ |
| 3. Has any person proposed for insurance ever had, been diagnosed as having, or been treated for, acquired immune deficiency syndrome (AIDS) "AIDS" related complex (ARC), or antibodies to human T-cell lymphotropic virus, type III (HTLV-III)? | ☐ | ☒ |

Give complete details of any "yes" answers to Questions 1, 2 or 3.

| No. | Name | Disease, Condition or Abnormality | Date | Details, Physicians, Hospitals, Addresses |
|---|---|---|---|---|
| | | | | |

I have read the above entire completed application. The statements and answers to this application are true and correct to the best of my knowledge and belief. I understand: (a) that under a cancer expense policy, coverage begins 30 days from its Effective Date if the full first premium has been paid; (b) that no person who has attained age 65 years is eligible for coverage under an intensive care unit policy; and (c) that under a heart attack hospital and convalescent policy, coverage begins 60 days from its Effective Date if the full first premium has been paid.

I hereby certify that each question on this application was asked of the applicant by me; that the applicant's answers thereto have been accurately recorded hereon; and that I witnessed the applicant's signature.

_Harry Buckner_ (Agent's Signature)   T3590

_Norris L. McCaskill_ (Applicant's Signature)

Date **4-4-90**

Form EN4096

# EQUITY NATIONAL LIFE INSURANCE COMPANY
HOME OFFICE: ATLANTA, GEORGIA
Administrative Offices: 501 Wood Lane, Little Rock, Arkansas 72201

## SPECIFIED DISEASE COVERAGE-CANCER
## REQUIRED OUTLINE OF COVERAGE
Retain for Your Records
Policy Form ENCAN3

1. Read Your Policy Carefully. This outline of coverage provides a very brief description of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. It is, therefore, important that you READ YOUR POLICY CAREFULLY!

2. Specified disease coverage is designed to provide you with coverage paying benefits only when certain losses occur as a result of the specified disease. Coverage is provided for the benefits outlined in Paragraph 3. The benefits described in Paragraph 3 may be limited by Paragraph 4.

3. **Benefits.** (All limits shown are lifetime limits for each person covered.)

   - Hospital confinement - $200 per day for the first 90 days.

   In Hospital Drugs & Medicine - Expenses (to $24 per day) for drugs and medicine provided in hospital and charged to insured.

   Surgery - As shown in Schedule of Policy. Maximum $75 to $2,000 per operation depending on type of operation. No limit on number of operations.

   Laser Surgery - As shown in Schedule of Policy. Maximum $75 to $2,000 per operation depending on type of operation. No limit on number of operations.

   Physician - Expenses to $25 per day in hospital for physician other than surgeon.

   Private Nursing - Expenses to $75 per day in hospital, as required for R.N., L.P.N. or L.V.N.

   Radiotherapy & Chemotherapy - Expenses for treatment, except for skin cancer, in or out of hospital. Expenses to $50 per skin cancer treatment. Does not include diagnostic work.

   Anesthesia - Expenses to the greater of $50 or 25% of amount shown in Schedule of Operations in policy. Limit $500 per operation.

   Blood & Plasma - Expenses for actual charges.

   Ambulance - Expenses up to $100 per trip, to and from hospital. Limit $200 per confinement.

   U.S. Government Hospital Confinement - $200 per day for first 15 days; $100 per day for 16th through 30th day; and $50 for each day thereafter. No other benefits are payable for confinement in a U.S. Government Hospital.

   Prosthesis - Expenses to $500 for actual charges for each prosthetic device. Limit $1,000.

   Transportation & Lodging - If treatment is prescribed in a hospital located over 200 miles from insured's home, $50 per day of hospital confinement. Limit $600 per confinement.

   Home Care - Payable for number of days confined to hospital up to 30 days, less the first 14 days, at a rate of $25 per day.

   Convalescent Nursing Home - Expenses to $100 per day following confinement within 14 days following at least 90 consecutive days of hospital confinement for cancer. Limit $6,000.

   Extended Hospital Confinement - The Company will pay 100% of the charges for hospital care and treatment (up to $15,000 per month) beginning with the 91st consecutive day of confinement until discharge. There are no lifetime limits. No deduction will be made for sums paid previously.

Form EN5003

00E925559

Hospice - Expense to $50 per day. Limit $1,000.

4. **Exclusions, Limitations, and Reductions.** This is not a daily hospital expense plan. It pays only for loss resulting from cancer treatment, including only direct extension, metastatic spread or recurrence. Pathologic proof of diagnosis is required. The policy does not cover any other diseases or illness.

   This policy is not issued to persons who have ever been diagnosed as having cancer. It does not cover cancer which is diagnosed less than 30 days after the policy effective date.

   The term "hospital" does not include U.S. Government or Veterans Administration hospitals, rest homes, mental institutions, sanitaria, nursing homes, or convalescent care facilities. Benefits while confined in a U.S. Government Hospital are in lieu of all other benefits of the policy.

   The term "convalescent nursing home" does not include: rest homes; homes for the aged; homes for the care of drug addicts, alcoholics, or the mentally ill; or homes providing custodial or educational care.

   This policy will not be issued to persons age 65 or older.

5. **Renewability.** The plan is renewable for life, at then current premium rates. Rates may be changed on a class basis, only if changed on all policies of this form number in force in your state.

6. **Premium.**

   |  | Annual | Semi-Annual | Quarterly | Monthly Bank Draft | Monthly Franchise Payroll Deduction |
   |---|---|---|---|---|---|
   | Individual | $178.80 | $ 89.40 | $44.70 | $14.90 | $11.30 |
   | Family | 238.20 | 119.10 | 59.55 | 19.85 | 15.10 |

   This policy has a grace period of 31 days.

7. **Filing a Claim.**
   Notify the Claims Department, Equity National Life Insurance Company, Administrative Offices, 501 Wood Lane, Little Rock, AR 72201

   Employee
   Licensed Resident Agent _____ Date_____

Form EN5003

00E925559